[No. 19938.  Department Two.  July 22, 1926.]

## S. L. LEWIS, *Appellant,* v. JAY C. ALLEN *et al., Respondents.*[1]

[1] TROVER AND CONVERSION (29)—CONNECTION OF DEFENDANT WITH ACT OF CONVERSION—EVIDENCE—SUFFICIENCY.  There was no sufficient evidence to sustain a verdict finding that the defendant had received money obtained from the plaintiff by a Mrs. G. through false representations, where it is shown that the receipt relied upon, and the transaction between defendant and Mrs. G. antedated the false representations by which Mrs. G. obtained plaintiff's money and that the defendant had no knowledge of such fraud until months thereafter.

Appeal from a judgment of the superior court for King county, Davidson, J., entered November 17, 1925, in favor of the defendants notwithstanding the verdict of the jury in favor of the plaintiff, in an action for conversion.  Affirmed.

*S. H. Kelleran* and *George F. Hannan,* for appellant.

*Frank S. Griffith* and *Tucker, Hyland & Elvidge,* for respondent.

PARKER, J.—The plaintiff Lewis commenced this action in the superior court for King county seeking recovery of the sum of $5,000 from the defendants, Allen and wife, resting his claim of recovery upon the theory that Allen, acting for himself and the community composed of himself and wife, received that sum of money from Mrs. Griffin, then knowing that it was the property of Lewis, and that she had obtained it from Lewis under false pretenses.  A trial in the superior court upon the merits resulted in a verdict awarding to Lewis recovery as prayed for.  Thereafter, by timely motion, counsel for the Allens asked for judgment in their favor notwithstanding the verdict.  This motion was

[1]Reported in 247 Pac. 1037.

by the court sustained and judgment rendered accordingly, upon the ground that there was not sufficient evidence to sustain the verdict. From this disposition of the case, Lewis has appealed to this court.

During a period of several years, up until about September, 1922, Mrs. Griffin was maintaining a business in Seattle under the name of "Griffin Specialty Shop." Among other goods sold by her, were goods put upon the market by the Nu Bone Corset Company. The goods obtained by her from that company were sent to her C. O. D., she evidently not having established her credit with the company such as to enable her to otherwise obtain its goods. Her place of business in Seattle was in a building owned by Mrs. Allen; that is, she was Mrs. Allen's tenant. In November, 1921, and prior thereto, she had borrowed from Mr. and Mrs. Allen considerable sums of money for use in her business. In the latter part of November, 1921, according to the testimony of Allen, she desired to make a showing to the Nu Bone Corset Company of her financial responsibility, looking to her acquiring from that company a general agency for the sale of its goods in territory of considerable extent in the northwestern states, and asked Allen to give her some writing evidencing her financial worth to the extent of $5,000. Allen, yielding to this request, on November 30, 1921, made, signed and delivered to her the following writing:

"Law Offices of
JAY C. ALLEN
Suite 303, Rooms 23-24-25
Maynard Building
Phone Elliott 9
Seattle

"Nov. 30th, 1921.
"Received of Mary K. Griffin the sum of five thousand dollars deposit on contract. This money is in no

event to be used in the purchase of any goods or stock, and this receipt is not transferrable. I will return it on demand when contract is arranged. Jay C. Allen.''

Allen testified that he did not receive any money from her in connection with the making of this writing, though he recognized that, should she be given the agency by the Nu Bone Corset Company, it acting on the faith of this writing as to Mrs. Griffin's financial worth, he would probably incur liability to it thereon, which liability he was willing to assume in view of the high value of the proposed agency and her ability to earn money thereby. We shall assume, however, that the jury was warranted in believing that Allen did then actually receive $5,000 from Mrs. Griffin, as that writing purports to evidence, though we cannot assent to the view that the jury was at all warranted in finding that Allen received that, or any other sum of money, from Mrs. Griffin at any later date. There is no evidence so showing, as we shall presently more particularly notice.

On October 8, 1921, Lewis loaned to Mrs. Griffin $5,000 for use in her business. This was repaid by her, and on October 31, 1921, Lewis again loaned to Mrs. Griffin $5,458. This was also repaid by her. On December 5, 1921, Mrs. Griffin applied to Lewis for another loan, claiming that she needed the money to pay the C. O. D. purchase and express charges on a shipment of goods made to her by the Nu Bone Corset Company, which goods, she told him, had arrived in Seattle and were then in the hands of the American Express Company, awaiting the payment of charges thereon amounting to $6,472. She then exhibited to him a notice to that effect, purporting to have been sent to her by the express company. Relying upon her representations so made and accepting her offer

·of pledging the goods as security, he advanced to her that and an additional amount, she executing and delivering to him a so-called "trust receipt" purporting to secure the loan, reading as follows:

"TRUST RECEIPT

"Seattle, Wash., Dec. 6th, 1921

"Received from S. L. Lewis of Seattle Seven Thousand four hundred sixteen and 90/100 value in mdse. to be paid for by M. K. Griffin of Griffin Specialty Shop, at date or in thirty days from date 12/5/21, but $1500 is to be paid on or before Dec. 9th, 1921, balance however to be paid in 30 days.

"Said mdse. has been delivered to 1602 2nd Ave. Griffin Specialty Shop, Seattle, King County, Washington, upon the following terms and conditions.

"We are to hold said merchandise for and on account of said S. L. Lewis, and subject at all times to the orders of said S. L. Lewis, with liberty, however, to us to sell the same. The specific avails thereof, whether in cash, notes, or open account, as soon as received, to be transferred and delivered by us to said S. L. Lewis. The title to said merchandise and the avails thereof, to be and remain in said S. L. Lewis. We are to keep said merchandise insured at our expense, loss, if any, to be payable to said S. L. Lewis.

"Griffin Specialty Shop.
"M. K. Griffin."

Lewis did not further assure himself that the goods had actually arrived, assuming that she received them from the express company and proceeded to dispose of them in due course of her business. Soon after December 9th, Mrs. Griffin paid to Mr. Lewis the $1,500 due that day, leaving her owing him over $5,000. Thereafter, about September 1, 1922, it was first discovered by Mr. Lewis that Mrs. Griffin's representations as to the goods having come to her from the Nu Bone Corset Company by express were false; that no goods had come to her; and that the notice to that effect exhibited by her to Lewis, purporting to have been sent

to her by the express company, was a forgery.   There is no evidence that Allen learned at any earlier date of Mrs. Griffin having obtained any money from Lewis by any such false representations.   In the efforts of Lewis and his attorney, Kelleran, to procure payment of the balance due from Mrs. Griffin, they discovered, early in February, 1922, the existence of the receipt given by Allen to Mrs. Griffin purporting to evidence the placing in his hands of $5,000 on November 30, 1921.   They then seemingly conceived the idea that Mrs. Griffin had placed in Allen's hands $5,000 of the money she had received from Lewis to procure the goods from the express company, and that the receipt given to her by Allen was some evidence of that fact, though dated five days before the making of the loan by Lewis to Mrs. Griffin, when taken in connection with the oral testimony here relied upon by counsel for Lewis, which we will now notice.

Mrs. Griffin did not testify upon the trial of this case.   A criminal charge was filed against her by the prosecuting attorney of King county in October, 1922, rested upon her obtaining the loan of December 5, 1922, from Lewis by her false pretenses.   Soon thereafter she went east and has not been in this state since then.   The trial of this case occurred in October, 1925. According to Lewis's testimony, she had shown him the receipt Allen had given her and claimed to Lewis that Allen had $5,000 of Lewis's money.   Mr. Lewis testified as follows:

"I did not know Mr. Allen at that time.   She said she had a receipt at home and two or three days afterwards she showed me that receipt and told me that the money was there and was perfectly good.   I said I do not know the signature or the name and she said that she would take me to Mr. Allen's office and a few days afterwards she took me to Mr. Allen's office and

introduced me to him. I did not have the receipt at Mr. Allen's office and she did not show it. She took me into Mr. Allen's office and introduced me and said 'Mr. Allen, this is Mr. Lewis, the gentleman that money belongs to.' And Mr. Allen said 'That money is perfectly safe with me.' He gave me to understand that it was absolutely safe and relieved me a little, but I was not satisfied yet and kept going after it and she told me not to worry about it, it was safe. At that time I told Mr. Allen that money was my money and it was on the receipt and he said that money is perfectly safe, do not worry about that money, everything will come out all right. Mrs. Griffin had told me Mr. Allen had the money on contracts and until the contracts were signed I would not be able to get the money. This conversation was about the 15th of February, a little earlier or a little later—between that and the 15th of March and between the latter and the 15th of April, I made demands upon Mrs. Griffin. . . . About May 15th I made demand upon Mrs. Griffin and she kept delaying me from time to time. I made several appointments to go with Mrs. Griffin and Mr. Kelleran to Mr. Allen's office. About the latter part of May we all three met Mr. Allen at his office. I asked for that money and Mr. Allen told me I could get along without it, that I did not need the money now. That I had plenty of money. . . . Going back to the first time that I came in touch with Mr. Allen he said there was some contracts and as soon as the contracts were carried through it would be a good thing for her and the money would be forthcoming."

Kelleran, Lewis's attorney, testified as follows:

"I think it was about the middle of June that Mr. Allen, Mrs. Griffin, Mr. Lewis and I all got together. It was in Mr. Allen's office. Mr. Lewis said that he wanted his money and Mr. Allen in a laughing way said Mr. Lewis did not need any money, Mr. Lewis said that he did need it and Mr. Allen said that if he needed some money that he would loan him some himself."

Allen, in his testimony, contradicts a considerable portion of this testimony given by Lewis and Kelleran,

particularly as to statements they testified to his making. However, this testimony of Lewis and Kelleran comes the nearest of any to be found in the record lending support to the inference that Allen, at any time, admitted receiving $5,000 from Mrs. Griffin, or of having any knowledge that Mrs. Griffin had in her possession $5,000 or any other sum belonging to Lewis. As we read this record, there is no evidence therein tending to show that Allen had any knowledge whatever of Mrs. Griffin's having fraudulently or otherwise obtained any money from Lewis, either on December 6, 1921, or any other time prior to September, 1922, except that Allen did become aware, during February, 1922, of the claim of Lewis that Mrs. Griffin was indebted to him and of the claim of Lewis that Allen had received some of his money from Mrs. Griffin.

[1] We agree with what was evidently the conclusion of the trial court moving it to grant the judgment in favor of the Allens notwithstanding the verdict; that is, that there is no substantial evidence in this record supporting a conclusion that Allen at any time after November 30, 1921, received from Mrs. Griffin $5,000, or any other sum. It follows that Allen did not receive any of Lewis's money which he advanced to Mrs. Griffin five days later, on December 5, 1921.

Allen produced upon the trial of this case checks drawn by him payable to Mrs. Griffin, one dated November 30, 1921, for $1,500, the very day he gave Mrs. Griffin the purported $5,000 receipt; one dated December 12, 1921, for $1,500; one dated January 20, 1922, for $500; and one dated February 20, 1922, for $650; all of which appear to have been cashed by her; and he further testified that, in February, 1922, he gave her another check for $1,000 which she cashed, which

has been lost. This is of interest here, only in that it indicates a payment to Mrs. Griffin by Allen of more than the $5,000 after November 30, 1921, all of which occurred before Allen had the slightest intimation of any fraudulent transactions on the part of Mrs. Griffin as against Lewis. This, of course, is only a sidelight suggesting that possibly there might be a question as to whether or not Allen was indebted to Mrs. Griffin, or as to whether or not he had funds in his hands belonging to her. But it must be remembered that this is not a garnishee proceeding, and the Allens are not here called upon to defend this action upon any such theory. Our problem is not whether or not the Allens are indebted to Mrs. Griffin, or as to whether or not they have in their possession any property or funds belonging to her, but our problem is as to whether or not Allen, acting for himself and for the community, has converted $5,000, the property of Lewis. We are fully convinced, as the trial court evidently was, that the evidence wholly fails to show any such conversion, or of Allen ever having in his hands any money belonging to Lewis.

Our view of the cause, which we have here set forth, renders it unnecessary for us to notice alternative contentions made in behalf of the Allens rested upon the pending and disposition of other actions, in one of which Allen is a garnishee defendant, claimed as barring the right of Lewis to maintain this action.

The judgment of the trial court, rendered in favor of Allen and wife notwithstanding the verdict, is right and must be affirmed. It is so ordered.

TOLMAN, C. J., MACKINTOSH, MITCHELL, and ASKREN, JJ., concur.